## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
## ALEXANDRIA DIVISION

| | |
|---|---|
| ROKU, INC., | |
| Plaintiff | Civil Action No. _____ |
| v. | COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF |
| UNITED STATES PATENT AND TRADEMARK OFFICE, and JOHN A. SQUIRES, in his official capacity performing the functions and duties of the Under Secretary of Commerce for Intellectual Property and Director, United States Patent and Trademark Office. | Administrative Procedure Act Case |
| Defendants. | |

## COMPLAINT

Plaintiff Roku, Inc. ("Roku") brings this Complaint for Declaratory and Injunctive Relief against Defendant United States Patent and Trademark Office (the "Patent Office"), and Defendant John A. Squires, in his official capacity performing the functions and duties of the Under Secretary of Commerce for Intellectual Property and Director of the United States Patent and Trademark Office (the "Director"), and alleges as follows:

## NATURE OF THE ACTION

1.      Roku challenges under the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701-706, the March 26, 2026 decision to terminate an *ex parte* reexamination without reasoned explanation and in direct contradiction of the agency's own prior findings.

**INTRODUCTION**

2.      The Supreme Court has explained that the reexamination statute, 35 U.S.C. § 304, "allows the Director to institute proceedings on a claim-by-claim and ground-by-ground basis."[1] The *BMW* Court in this District ruled that when terminating such a reexamination proceeding, the Patent Office must "analyze [its] decision on a ground-by-ground basis" and "adequately explain [its] analysis as to the factual record before [it] on a ground-by-ground basis."[2]  The Patent Office's failure to do so is arbitrary and capricious and a violation of the APA.[3]

3.      Contrary to the *BMW* decision, the Patent Office here terminated a reexamination requested by Roku without analyzing its decision on a ground-by-ground basis, and without adequately explaining its analysis as to the factual record before it on a ground-by-ground basis.

4.      Instead, the Patent Office only stated in conclusory fashion that the longstanding rejections of the claims that were the subject of the reexamination were "no longer tenable."[4]  However, the Patent Office never explained what construction of the claims it was relying on in reaching this conclusion or what elements of the claims were supposedly not shown in the prior art.  To the contrary, the Patent Office failed to provide any analysis of the prior art that would allow Roku (or any member of the public) to know the basis for the Patent Office's decision, let alone the ground-by-ground analysis required by law of the nine separate grounds of rejection present in this reexamination and prior substantial new questions of patentability found

---

[1] *SAS Inst., Inc. v. Iancu*, 584 U.S. 357, 365-366 (2018).

[2] *BMW of N. Am., LLC v. Vidal*, 24-cv-235-PGT-WEF, 2025 U.S. Dist. LEXIS 55607, at *12, 20 (E.D. Va. Mar. 25, 2025).

[3] *Id.* at *12-13.

[4] Ex. A, at 5.

by the Patent Office.  In the absence of this analysis, the Patent Office's decision was arbitrary and capricious and a violation of the APA.

5.      What the Patent Office should have done was first state its construction of the claims under the Federal Circuit's *Phillips* decision.[5]  After that, the Patent Office should have applied that construction to the prior art in each of the grounds used to reject the claims in the reexamination.  This analysis would have required the Patent Office, at a minimum, to affirmatively state what element or elements were missing from the many prior art references and/or why those references could not be combined to render the claims unpatentable.  The failure of the Patent Office to perform any of these required steps renders its decision arbitrary and capricious and a violation of the APA.

6.      Further, the Patent Office's inconsistent treatment of the reexamination and a different, related reexamination supports that the Patent Office's decision was arbitrary and capricious and a violation of the APA.  The same agency treated the same basic issues totally differently, and this inconsistency was arbitrary and capricious.

7.      Roku requests that the Court declare that the Patent Office's decision is unlawful, set aside the decision, and remand the reexamination to the Patent Office to do what is required by the *BMW* decision: "analyze [its] decision on a ground-by-ground basis," and "adequately explain [its] analysis as to the factual record before [it] on a ground-by-ground basis."[6]

### OVERVIEW

8.      In the reexamination requested by Roku, all claims of U.S. Patent 10,972,584 ("the '584 Patent") were finally rejected by the Patent Office.  But in response to the patent

---

[5] *Phillips v. AWH Corp.*, 415 F.3d 1303 (Fed. Cir. 2005) (en banc).

[6] *BMW*, 2025 U.S. Dist. LEXIS 55607, at *12, 20.

owner's appeal brief to the Patent Office's Patent Trial and Appeal Board ("PTAB"), the Patent Office issued the March 26, 2026 decision ("the '584 Decision"), attached as Exhibit A.

9.    Pursuant to this Court's *BMW* decision, the Patent Office was required to analyze (i) each rejection (ii) on a "ground-by-ground basis."[7]  The '584 Decision does neither.

10.    As the '584 Decision is written, no court can discern how the Patent Office could terminate the '584 *Ex Parte* Reexamination ("'584 Reexam")—despite having finally rejected all claims on multiple grounds and having acknowledged multiple substantial new questions of patentability.  The '584 Decision does not address each rejection and each substantial new question of patentability found by the Patent Office, and the lack of ground-by-ground reasoning was arbitrary and capricious.

11.    An agency also acts arbitrarily when it treats materially indistinguishable matters differently without explanation.  That is precisely what occurred here.

12.    The Patent Office terminated the '584 Reexam through a cursory seven-page decision that abandoned prior final rejections and substantial-new-question-of-patentability findings without articulated claim constructions or ground-by-ground analysis, while allowing a closely related *ex parte* reexamination involving a related patent—U.S. Patent No. 10,447,819 ("the '819 Patent")—to proceed through appeal based on detailed reasoning and express claim constructions.

13.    The two proceedings involve the same basic issues.  Yet the Patent Office offered no explanation for why it treated the issues totally differently—the reexamination of the '584 Patent was summarily terminated while reexamination of the '819 Patent continues.  This unexplained divergence underscores the arbitrary and capricious nature of the '584 Decision.

---

[7] *Id.*

14.     For these reasons, the '584 Decision was arbitrary and capricious and contrary to law, in violation of 5 U.S.C. § 706(2)(A), and "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right," in violation of 5 U.S.C. § 706(2)(C).

### PARTIES

15.     Roku is a corporation organized and existing under the laws of Delaware, with its principal place of business at 1173 Coleman Ave., San Jose, California 95110.

16.     Roku provides digital media players, TVs, and streaming accessories, has earned an international reputation for quality, reliability, and value, and has pioneered key breakthroughs in the video streaming industry.

17.     Roku is a frequent user of USPTO post-grant proceedings and was directly injured by the termination of the '584 Reexam because, as discussed below, it has been sued for infringement of the '584 Patent, and a post-trial motion in the infringement action is pending.  To the extent the district court grants the post-trial motion in the infringement action, Roku faces the risk of infringement liability for a patent that the Patent Office finally rejected all claims on multiple grounds and acknowledged multiple substantial new questions of patentability.

18.     The Patent Office is a federal agency within the United States Department of Commerce and is headquartered in Alexandria, Virginia.

19.     John A. Squires is the Under Secretary of Commerce for Intellectual Property and Director of the Patent Office.  The Director oversees the operations of the Patent Office and has statutory authority to decide whether to institute *ex parte* reexaminations of patent claims, conduct the reexamination proceedings, and issue reexamination certificates.  35 U.S.C. §§ 304, 305, and 307.  The Director is being sued in his official capacity.  His principal place of business is in Alexandria, Virginia.

## JURISDICTION AND VENUE

20.     This case arises under the Administrative Procedure Act ("APA"), 5 U.S.C. § 701

*et seq*. This Court has subject matter jurisdiction under 28 U.S.C. § 1331.

21.     Under 5 U.S.C. § 702, Defendants have waived sovereign immunity in this suit.

22.     Roku's claims for declaratory and injunctive relief are authorized by 28 U.S.C. §§

2201 and 2202, by 5 U.S.C. §§ 702-706, by Federal Rules of Civil Procedure 57 and 65, and by

the inherent equitable powers of this Court.

23.     Venue is proper in this District under 28 U.S.C. § 1391(e) and 5 U.S.C. § 703

because Defendants are located and perform official duties in this District.

24.     The '584 Decision is a final agency action subject to judicial review under 5

U.S.C. § 704.  This decision conclusively terminated the '584 Reexam and directed issuance of a

reexamination certificate confirming patentability, leaving no further agency process in the '584

Reexam and depriving Roku of the statutory reexamination it properly invoked.[8]

25.     The '584 Decision notes that Defendants had already determined that Roku's

request for reexamination of the '584 Patent raised a substantial new question of patentability

before the '584 Decision: "It has been determined in the Order Granting Ex Parte Reexamination

(hereafter the 'Order') mailed on 12/01/2023 that a substantial new question of patentability was

raised in the Request for Ex Parte Reexamination filed on 09/02/2023."  Ex. A, at 2.  Thus, the

---

[8] *See, e.g.*, *Sys. Application & Techs. v. United States*, 691 F.3d 1374, 1384-1385 (Fed. Cir. 2012) ("Final agency action hinges on two points: First, the action must mark the consummation of the agency's decision-making process – it must not be of a merely tentative or interlocutory nature. And second, the action must be one by which rights or obligations have been determined, or from which legal consequences will flow." (internal citation omitted)).

'584 Decision did not decide whether a substantial new question of patentability was raised, and 35 U.S.C. § 303(c) does not bar this suit.

## STANDARD OF REVIEW

26.     In reviewing the '584 Decision under the APA, the Court must look to whether the Patent Office "examine[d] the relevant data and articulate[d] a satisfactory explanation for its action including a rational connection between the facts found and the choice made."[9]

27.     A decision by the Patent Office is arbitrary and capricious "when the agency fails to articulate a rational connection between the facts found and the choice made."[10]  Examples of arbitrary and capricious decision-making include when the agency "offer[s] an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise."[11]

## FACTUAL BACKGROUND

### The Patent System

28.     Since the first patent laws were enacted in 1790, the U.S. patent system has been a key engine of innovation and economic growth.  Companies like Roku depend on the U.S. patent system both to provide strong legal protection for meritorious patent claims and to "weed out bad patent claims efficiently," without the need for expensive litigation.[12]

---

[9] *See, e.g.*, *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983) (internal citations omitted).

[10] *See, e.g.*, *In re Vivint, Inc.*, 14 F.4th 1342, 1351 (Fed. Cir. 2021) (quoting *Motor Vehicle Mfrs. Ass'n*, 463 U.S. at 43).

[11] *Motor Vehicle Mfrs. Ass'n*, 463 U.S. at 43.

[12] *Thryv, Inc v. Click-To-Call Techs., LP*, 590 U.S. 45, 54 (2020).

29. To achieve these goals, and to ensure that bad patents do not inhibit innovation and competition, Congress has enacted parallel administrative processes for parties to seek review of the patentability of an issued claim: *ex parte* reexamination and *inter partes* review ("IPR").[13]

30. "Any person at any time" may request that the Patent Office reexamine the patentability of an issued patent claim, through *ex parte* reexamination.  35 U.S.C. § 302.  If the Director concludes that a request raises a substantial new question of patentability, the Director must order an *ex parte* reexamination to resolve the question of patentability. *Id.* §§ 303-305.

**The Relevant Patents**

31. The '584 Patent is titled "Apparatus, Method and System for a Tunneling Client Access Point" and issued April 6, 2021.  The '584 Patent is assigned to IOENGINE LLC ("IOENGINE").

32. The '819 Patent is in the same patent family as the '584 Patent.  The '819 Patent is also titled "Apparatus, Method and System for a Tunneling Client Access Point" and issued October 15, 2019.  The '819 Patent is also assigned to IOENGINE.

33. The '584 Patent and the '819 Patent disclose substantially the same technical architecture: a *portable device* that intermediates communications between a network node and a *terminal* (such as a computing device with a display), presenting an interactive user interface at

---

[13] *See Thryv*, 590 U.S. at 54 ("By providing for inter partes review, Congress, concerned about overpatenting and its diminishment of competition, sought to weed out bad patent claims efficiently."); *SAS*, 584 U.S. at 360 ("Maybe the invention wasn't novel, or maybe it was obvious all along, and the patent owner shouldn't enjoy the special privileges it has received.  To remedy these sorts of problems . . . Congress has supplemented litigation with various administrative remedies.  The first of these was ex parte reexamination.").

the terminal, receiving user input through that interface, and transmitting data between the network and the terminal in response to that input.  In both patents, the portable device includes network and terminal communication interfaces, a processor, and stored program code that (i) enables user-driven control of the portable device via the terminal interface and (ii) facilitates secure or managed transmission of data content from the network to the terminal.[14]  The claims differ in wording and implementation detail, but they embody the same portable-device-to-terminal system and were expressly tied together through terminal disclaimers filed by the patent owner.[15]

34.      The '819 Patent expired on March 23, 2024, and the '584 Patent expired on May 13, 2024.[16]

### The IOENGINE Litigation Against Roku

35.      On December 14, 2021, IOENGINE sued Roku for infringement of the '584 Patent and the '819 Patent in the U.S. District Court for the Western District of Texas. *IOENGINE, LLC v. Roku Inc.*, 6:21-cv-01296-ADA (W.D. Tex.) ("the IOENGINE Litigation"). At trial, the jury found that Roku did not infringe the asserted claims of the '584 Patent and the

---

[14] For ease of reference, the full text of representative claims—Claim 1 of U.S. Patent No. 10,972,584 and Claim 184 of U.S. Patent No. 10,447,819—is reproduced in Exhibit B.  Roku does not rely on any differences in claim wording for purposes of this pleading.

[15] During patent examination in the Patent Office, an applicant may file a terminal disclaimer to disclaim the portion of term of one patent which extends beyond the expiration date of another patent. 37 C.F.R. § 1.321.  As explained by the Federal Circuit, "a terminal disclaimer is a strong clue that a patent examiner and, by concession, the applicant thought that the claims [in one patent application] lacked a patentable distinction over [another patent application]."  *SimpleAir, Inc. v. Google LLC*, 884 F.3d 1160, 1168 (Fed. Cir. 2018).

[16] "A patent owner maintains some rights after the patent expires, including the rights to sue for past damages," and thus the Patent Office "has jurisdiction over *ex parte* reexaminations concerning expired patents."  *In re Gesture Tech. Partners, LLC*, 160 F.4th 1317, 1322 (Fed. Cir. 2025).  Thus, Roku continues to face the risk of infringement liability for the '584 Patent.

'819 Patent. *IOENGINE,* ECF No. 377 (finding claims 10-11, 18, 20, 26-27, 29, 48, and 60-61 of the '584 Patent and claims 187 and 192 of the '819 Patent were not infringed).

36.    On June 17, 2024, IOENGINE filed a renewed motion for judgment as a matter of law on infringement.  IOENGINE's post-trial motion is fully briefed and is pending.

## Related IPRs Against the '584 Patent

37.    While the IOENGINE Litigation was pending, Roku filed four IPR petitions against the '584 Patent, challenging all 99 claims of the patent.  The Board denied institution of all four petitions under 35 U.S.C. § 314(a) and *Apple Inc. v. Fintiv, Inc.*, IPR2020-00019, Paper 11 (PTAB Mar. 20, 2020).[17]

38.    In denying institution, the Board found that "trial in the parallel district court proceeding is likely to be about six months prior to the due date for our final written decision if we were to institute an *inter partes* review" and that timeframe supported denial of institution. IPR2022-01551, Paper 11, at 11; IPR2022-01552, Paper 11, at 11-12; IPR2022-01553, Paper 11, at 10-11; IPR2022-01554, Paper 11, at 11.

## The '584 Reexam

39.    On September 2, 2023, Roku filed a request for *ex parte* reexamination of the '584 Patent.  The Patent Office assigned the '584 Reexam Control No. 90/015,292.  The '584 Reexam is the first *ex parte* reexamination of the '584 Patent.

40.    In its request for *ex parte* reexamination of the '584 Patent, Roku asserted 19 substantial new questions of patentability against claims 1-99 of the '584 Patent.  While asserted

---

[17] *Roku, Inc. v. IOENGINE, LLC*, IPR2022-01551, Paper 11, at 17-18 (PTAB May 5, 2023); *Roku, Inc. v. IOENGINE, LLC*, IPR2022-01552, Paper 11, at 18 (PTAB May 5, 2023); *Roku, Inc. v. IOENGINE, LLC*, IPR2022-01553, Paper 11, at 17 (PTAB May 5, 2023); *Roku, Inc. v. IOENGINE, LLC*, IPR2022-01554, Paper 11, at 17-18 (PTAB May 5, 2023).

substantial new questions of patentability 1-4 and 9-13 are based on references from the non-instituted IPRs against the '584 Patent, asserted substantial new questions of patentability 5-8, 14-18, and 19 are based on references that were not before the Board in the non-instituted IPRs, and therefore not previously considered.[18]

**The Patent Office Found Multiple Substantial New Questions of Patentability and Entered Final Rejection**

41.     On December 1, 2023, the Patent Office ordered reexamination in the '584 Reexam.  The December 1, 2023 Order was signed by Primary Examiner Peng Ke and Conferees "RSD" and Supervisory Patent Examiner Alexander J. Kosowski.

42.     In the December 1, 2023 Order, the Patent Office found that "the Request raises a substantial new question of patentability of the challenged claims of the '584 Patent."  '584 Reexamination Order, dated Dec. 1, 2023, at 14, 16.  In the December 1, 2023 Order, the Patent Office found substantial new questions of patentability based on Alger & Lyle, Ozawa & Prabhu, and Alger & Lyle and Ozawa & Prabhu in combination with Chang, Connelly, Halbert, Dowling, Laksono, Spies, Boebert, Swix, and HDCP.  '584 Reexamination, Order, dated Dec. 1, 2023, at 7-10 (finding Issues 1-3).

43.     On April 19, 2024, the Patent Office issued a non-final office action in the '584 Reexam.  The April 19, 2024 non-final office action was signed by Primary Examiner Ke and Conferees Primary Examiner B. James Peikari and Supervisory Patent Examiner Kosowski.

44.     On September 18, 2024, the Patent Office issued a second non-final office action in the '584 Reexam.  The September 18, 2024 non-final office action was signed by Primary

---

[18] *See* Exhibit C for a chart of the substantial new questions of patentability in the request for the '584 Reexam, with substantial new questions of patentability not presented in the IPRs annotated in orange.

Examiner Ke and Conferees Reexamination Specialist Peikari and Supervisory Patent Examiner Kosowski.

45.    On February 11, 2025, the Patent Office issued a final office action in the '584 Reexam.  The February 11, 2025 final office action was signed by Primary Examiner Ke and Conferees Reexamination Specialist Peikari and Supervisory Patent Examiner Kosowski.

46.    In the February 11, 2025 final office action, the Patent Office finally rejected claims of the '584 Patent on nine different grounds.  The February 11, 2025 final rejection is *217 pages* long.

47.    IOENGINE filed a notice of appeal of the final rejection on April 10, 2025, and filed its Appeal Brief on July 10, 2025.

48.    In IOENGINE's Appeal Brief, IOENGINE argued that the Patent Office erred in its construction of the claim terms "portable device" and "stream," and proposed constructions for these terms.

### The Patent Office Reverses Course Without Explanation

49.    On March 26, 2026, the Patent Office issued the '584 Decision.  Ex. A.  The '584 Decision is signed only by Primary Examiner Dennis G. Bonshock and Conferee Supervisory Patent Examiner Kosowski.

50.    The '584 Decision is seven pages long.  The '584 Decision does not provide reasoning on a ground-by-ground basis why the nine different grounds earlier found by the Patent Office in the February 11, 2025 final office action are incorrect.  The '584 Decision also does not provide reasoning on a ground-by-ground basis why the substantial new questions of patentability found by the Patent Office in the December 1, 2023 Order are incorrect.

51.     Instead, in the '584 Decision, the Patent Office stated "[i]t is however, recognized now that the incorrect standard was applied to these now expired claims," "[t]he proper standard for which to interpret claims in the '584 Patent, which expired on March 23, 2024 [sic] prior to the Non-Final Office action going out, is under the Phillips Standard ('ordinary and customary')," and "the current examiner disagrees with the use of modern definitions to interpret claim terms from 20+ years ago." Ex. A, at 4-5. Yet the '584 Decision provides no explanation of how to construe the claims of the '584 Patent.

52.     In the '584 Decision, the Patent Office states that "the previous rejections . . . are no longer tenable":

> Returning to the claims given the narrower standard afforded under Phillips, the Examiner believes that the previous rejections, made under a broadest reasonable interpretation (BRI), are no longer tenable, based on the ordinary and customary meaning of claim terms to a person of ordinary skill in the art at the time of the invention (Phillips Standard). In particular, the proposed combinations of the set-top box disclosed in HDCP and Prabhu with the corresponding systems disclosed in Alger, Ozawa, Laksono, and Spies (amongst others) has not been described in a manner that would prove such combinations to have been obvious to one having ordinary skill in the art at the time the invention was made.

*Id.* at 5. But the Patent Office does not provide ground-by-ground reasoning in the '584 Decision why the prior art references in the '584 Reexam do not render obvious claims 1-99 of the '584 Patent under the unexplained claim construction of the Patent Office.

53.     For example, although IOENGINE argued in its Appeal Brief that the Patent Office erred in its claim construction of "portable device" and "stream," and proposed its own claim construction of the terms, the '584 Decision provides no claim constructions of "portable device" or "stream." Further, the '584 Decision provides no analysis of IOENGINE's proposed claim constructions.

54.     The '584 Decision's seven pages of text confirming the patentability of the claims of the '584 Patent is far less than the earlier reasoning of the Patent Office in the February 11, 2025 final office action and the December 1, 2023 Order to start the '584 Reexam.  The February 11, 2025 final office action is 217 pages, and the Patent Office provides detailed reasoning for its nine different grounds of rejection of claims 1-99 of the '584 Patent.  The December 1, 2023 Order to start the '584 Reexam is 18 pages and provides detailed reasoning for the substantial new questions of patentability based on Alger & Lyle, Ozawa & Prabhu, and Alger & Lyle and Ozawa & Prabhu in combination with Chang, Connelly, Halbert, Dowling, Laksono, Spies, Boebert, Swix, and HDCP.

55.     The Patent Office was required to draft the '584 Decision on a ground-by-ground basis addressing each rejection and substantial new question of patentability found by the Patent Office, but the Patent Office did not do so.[19]  As the '584 Decision is written, no court can discern—from the administrative record—how the Patent Office could have terminated the '584 Reexam despite having finally rejected all claims on nine grounds and having acknowledged the substantial new questions of patentability.  The '584 Decision was arbitrary and capricious and contrary to law, and the Director exceeded his statutory authority in terminating the '584 Reexam for at least the reason that the Patent Office failed to articulate a rational connection between the facts found and the choice made.  To the extent the '584 Decision contains any reasoning, the Patent Office offered an explanation for its decision to terminate the '584 Reexam that runs counter to the evidence before the agency, and the '584 Decision is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.

---

[19] *BMW*, 2025 U.S. Dist. LEXIS 55607, at *12, 20.

## Unexplained Reassignment in the '584 Reexam

56.     The '584 Decision reflects unexplained examiner reassignment.  The examiner who signed the '584 Decision has not signed any other paper from the Patent Office in the years-long history of the '584 Reexam, and the Patent Office did not provide any explanation in the '584 Decision or any other paper in the administrative record why the new examiner was assigned to the '584 Reexam for the '584 Decision.

57.     Primary Examiner Bonshock has not signed any other paper from the Patent Office in the '584 Reexam.  In the '584 Decision, the Patent Office refers to the "current examiner" and "previous examiner."  Ex. A, at 4, 5.  The Patent Office did not provide any explanation in the '584 Decision or any other paper why Primary Examiner Bonshock has been newly assigned to the '584 Reexam.

58.     The Patent Office employee who issued every substantive office action and the final rejection—Primary Examiner Ke—was replaced for the termination decision, without explanation in the administrative record.  These procedural anomalies reinforce the absence of reasoned decision-making.

59.     Only Primary Examiner Bonshock and Conferee Supervisory Patent Examiner Kosowski signed the '584 Decision.  Reexamination Specialist Peikari (who as discussed below is the examiner in the '819 Reexam) was a conferee on several other papers in the '584 Reexam but not the '584 Decision.[20]

60.     On information and belief, Reexamination Specialist Ke and Reexamination Specialist Peikari are still employed by the Patent Office.

---

[20] The Patent Office changed the titles of Mr. Ke and Mr. Peikari from "Primary Examiner" to "Reexamination Specialist" in later papers.

**The Patent Office's Inconsistent Treatment of the '584 Reexam and the '819 Reexam**

61.     The Patent Office's inconsistent treatment of the '584 Reexam and a different reexamination of a patent related to the '584 Patent supports that the '584 Decision was arbitrary and capricious and contrary to law, and the Director exceeded his authority in terminating the '584 Reexam.  As discussed below, the same agency treated the same basic issues totally differently and such inconsistency was arbitrary and capricious.

62.     Roku requested *ex parte* reexamination of claims 184-192 of the '819 Patent ("the '819 Reexam"), and claims 184-192 stand finally rejected in in the '819 Reexam.  IOENGINE filed a notice of appeal to the final rejection in the '819 Reexam to the Board on April 10, 2025, and IOENGINE filed an appeal brief on July 10, 2025.

63.     Unlike the '584 Reexam, no examiner from the Patent Office terminated the '819 Reexam in response to IOENGINE's appeal brief.  Instead, on March 5, 2026, the examiner filed an answer to the appeal brief.

64.     IOENGINE's appeal to the Board in the *ex parte* reexamination is pending.

65.     The Patent Office's inconsistent treatment of claims 1-99 of the '584 Patent in the '584 Reexam and claims 184-192 of the '819 Patent in the '819 Reexam supports that the Patent Office's '584 Decision was arbitrary and capricious and contrary to law, and the Director exceeded his statutory authority in terminating the '584 Reexam.

66.     On September 2, 2023, Roku filed the request for the '819 Reexam.  The Patent Office assigned the '819 Reexam Control No. 90/015,293.  The '819 Reexam is the first reexamination of the '819 Patent.

67.     In its request for reexamination of the '819 Patent, Roku asserted 11 substantial new questions of patentability against claims 184-192.  For claim 184, Roku's request for *ex*

*parte* reexamination presents new unpatentability arguments and new prior art compared to non-instituted IPR petitions against the '819 Patent.[21]

68.    On December 1, 2023, the Patent Office ordered reexamination in the '819 Reexam.  The December 1, 2023 Order was signed by Reexamination Specialist Peikari and Conferees Reexamination Specialist C. Michelle Tarae and Supervisory Patent Examiner Kosowski.

69.    In the December 1, 2023 Order, the Patent Office found all 11 substantial new questions of patentability asserted by Roku were substantial new questions of patentability.  '819 Reexamination, Order, dated Dec. 1, 2023, at 7-17 (finding Issues 1-11).

70.    On April 19, 2024, the Patent Office issued a non-final office action in the '819 Reexam.  The April 19, 2024 non-final rejection was signed by Reexamination Specialist Peikari and Conferees Primary Examiner Ke and Supervisory Patent Examiner Kosowski.

71.    On September 18, 2024, the Patent Office issued a second non-final office action in the '819 Reexam.  The September 18, 2024 non-final office action was signed by Reexamination Specialist Peikari and Conferees Primary Examiner Ke and Supervisory Patent Examiner Kosowski.

72.     On February 14, 2025, the Patent Office issued a final office action in the '819 Reexam.  The February 14, 2025 final office action was signed by Reexamination Specialist Peikari and Conferees Reexamination Specialist Ke and Supervisory Patent Examiner Kosowski.

---

[21] *See* Exhibit D for a chart of the substantial new questions of patentability in the request for the '819 Reexam.

73.     In the February 14, 2025 final office action, the Patent Office finally rejected claims of the '819 Patent on four grounds.  The February 14, 2025 final rejection is 55 pages long.

74.     IOENGINE filed a notice of appeal of the final rejection and filed its Appeal Brief on July 10, 2025.

75.     On March 5, 2026, the Patent Office filed an answer to IOENGINE's appeal brief. The Answer is signed by Reexamination Specialist Peikari and Conferee Supervisory Patent Examiner Kosowski.

76.     In the March 5, 2026 Answer, the Patent Office maintained all four grounds against claims 184-192 of the '819 Patent.  Further, in the March 5, 2026 Answer, the Patent Office construed the claim terms "terminal," "portable," and "streaming."  Answer, at 5-6. Notably, the Patent Office stated that "[t]he examiner has relied heavily on the disclosure to inform claim construction," and "[t]hus, the correct legal standard was applied to claim construction."  Answer, at 32.

77.     The detailed reasoning in the March 5, 2026 Answer highlights the lack of ground-by-ground reasoning in the '584 Decision.  IOENGINE has admitted that the claims of the '584 Patent and the claims of the '819 Patent are related by filing a terminal disclaimer for the '584 Patent over the '819 Patent.

78.     Further, the detailed reasoning in the March 5, 2026 Answer highlights that the Patent Office's explanation for its decision in the '584 Decision runs counter to the evidence before the agency and is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.

79.    For at least these reasons, the Patent Office's inconsistent treatment of the '584 Reexam and the '819 Reexam supports that the '584 Decision was arbitrary and capricious and contrary to law, and the Director exceeded his authority in terminating the '584 Reexam.

## COUNT I

**(Final Agency Action in Violation of 5 U.S.C. §§ 706(2)(A), (C) as to the '584 Decision)**

80.    Roku incorporates the preceding paragraphs by reference.

81.    The '584 Decision constitutes a final agency action of the Patent Office within the meaning of 5 U.S.C. § 704.  This decision conclusively terminated the '584 Reexam and directed issuance of a reexamination certificate confirming patentability, leaving no further agency process in the '584 Reexam and depriving Roku of the statutory reexamination it properly invoked.

82.    There are no administrative remedies available to the Director's determination.

83.    Under the APA, the Court "shall . . . hold unlawful and set aside" final agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," 5 U.S.C. § 706(2)(A), or "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right," *id.* § 706(2)(C).

84.    The '584 Decision terminating the '584 Reexam violated § 706(2)(A) because it was arbitrary and capricious and contrary to law, and violated § 706(2)(C) because the Director exceeded his statutory authority in terminating the '584 Reexam.

85.    The Patent Office is obligated to examine each new substantial question of patentability on the merits and to issue a reexamination certificate only after resolving every

ground of rejection on the record with reasoned explanation, and the Patent Office did not do so in the '584 Reexam.[22]  The Patent Office's violation of the APA harmed Roku.

86.    The '584 Decision was arbitrary and capricious and contrary to law, and the Director exceeded his statutory authority in terminating the '584 Reexam, because the Patent Office failed to articulate a rational connection between the facts found and the choice made. Among the fatal flaws in the administrative process: (1) the '584 Decision provided no ground-by-ground reasoning, (2) the '584 Decision was an unexplained departure from the Patent Office's prior substantial-new-questions-of-patentability findings, (3) the '584 Decision provided no claim construction, and (4) the '584 Decision was inconsistent with the Patent Office's treatment of the '819 Reexam.

87.    In addition, to the extent the '584 Decision contains reasoning for the Patent Office's decision to terminate the '584 Reexam, the Patent Office offered an explanation for its decision that runs counter to the evidence before the agency, and the '584 Decision is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.

## PRAYER FOR RELIEF

WHEREFORE, Roku respectfully requests that the Court:

A.    Declare that the '584 Decision is unlawful;

B.    Set aside the '584 Decision;

C.    Remand the '584 Reexam to the Board for further proceedings consistent with this Court's order;

D.    Award Roku its costs and attorney's fees and expenses as allowed by law; and

---

[22] *BMW*, 2025 U.S. Dist. LEXIS 55607, at *12, 20.

E.      Grant such other relief as the Court deems appropriate.


Dated: April 27, 2026

                                        Respectfully submitted,

                                        /s/ *Craig C. Reilly*

                                        Craig C. Reilly (VSB #20942)
                                        429 N. St. Asaph Street
                                        Alexandria, VA 22314
                                        Tel: (703) 549-5354
                                        craig.reilly@ccreillylaw.com

                                        *OF COUNSEL:*

                                        James L. Lovsin (pro hac vice forthcoming)
                                        Paul H. Berghoff (pro hac vice forthcoming)
                                        Alexandra E. Criner (pro hac vice forthcoming)
                                        McDonnell Boehnen Hulbert & Berghoff LLP
                                        300 S. Wacker Drive, Suite 3100
                                        Chicago, IL 60606-6709
                                        Tel: (312) 913-0001

                                        *Attorneys for Plaintiff Roku, Inc.*