# EXHIBIT D

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
## ALEXANDRIA DIVISION

| | | |
|---|---|---|
| BAZOOKA-FARMSTAR, LLC | ) | |
| | ) | |
| *Plaintiff,* | ) | Civil Action No. _____ |
| | ) | |
| v. | ) | **COMPLAINT FOR DECLARATORY** |
| | ) | **AND INJUNCTIVE RELIEF** |
| JOHN A. SQUIRES, in his official capacity | ) | |
| performing the functions and duties of the | ) | Administrative Procedure Act Case |
| Under Secretary of Commerce for | ) | |
| Intellectual Property and Director of the | ) | |
| United States Patent and Trademark Office, | ) | |
| and the UNITED STATES PATENT AND | ) | |
| TRADEMARK OFFICE, | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| *Defendants.* | ) | |
| _____ | ) | |

## COMPLAINT

Plaintiff Bazooka-Farmstar, LLC ("Bazooka" or "Plaintiff"), by and through its undersigned counsel, for its complaint against John A. Squires, in his official capacity performing the functions and duties of the Under Secretary of Commerce for Intellectual Property and Director of the United States Patent and Trademark Office (the "Director"), and the United States Patent and Trademark Office ("the USPTO"), (collectively, "Defendants") state as follows:

1

**NATURE OF THE ACTION**

1.    This is an action pertaining to U.S. Patent No. 10,974,557 ("the '557 Patent," attached as Exhibit 1)[1] brought pursuant to the Administrative Procedure Act, 5 U.S.C. §§ 701-706.

2.    Bazooka was sued by Nuhn Industries, Ltd. ("Nuhn") in 2021 for alleged infringement of the '557 Patent. Nuhn, a Canadian company, has misused the United States patent system as a competitive weapon rather than a means of protecting true innovation. By filing aggressive patent infringement suits against Bazooka—a respected Iowa manufacturer known for its hard-earned reputation, ingenuity, and service to American agriculture—Nuhn is seeking to stifle fair competition through litigation, not invention. This cross-border campaign exploits the resources of United States courts and the integrity of the United States patent system to burden an upstanding American company that builds real products for real farmers, while Nuhn tries to monopolize ideas it did not originate in the market. In order to obtain its United States patents, Nuhn knowingly withheld its own highly relevant prior art from the USPTO during prosecution, despite knowing it was material to patentability. Indeed, Nuhn's withheld prior art formed part of the basis on which its patent claims were found invalid in later USPTO proceedings, as further discussed below.

3.    Nuhn sued Bazooka for allegedly infringing four patents in successive lawsuits: the '557 Patent; U.S. Patent Nos. 11,358,425 ("the '425 Patent"); 11,491,835 ("the '835 Patent"); and 11,541,708 ("the '708 Patent") (collectively, "the Nuhn Patents"). The Nuhn Patents all share a common specification and claim and describe the same amphibious pumping vehicle.

---

[1] Appendix A provides a complete list of all exhibits attached to this Complaint.

4.      After Nuhn launched its litigation campaign against Bazooka, Bazooka took action to challenge the validity of the Nuhn Patents through post-grant proceedings before the USPTO, including *ex parte* reexaminations and *inter partes* reviews ("IPR"). *Ex parte* reexaminations are conducted by the Central Reexamination Unit ("Reexam Unit") of the USPTO, and IPRs are conducted by the Patent Trial and Appeal Board ("PTAB"), also within the USPTO.

5.      Between September 26, 2023 and February 22, 2024, Bazooka filed four requests for *ex parte* reexamination of the '557 Patent,[2] which were granted and merged into a single proceeding ("the '557 Patent Reexam"). Between June 30, 2023 and November 3, 2023, Bazooka also filed IPR petitions directed to the '425 Patent (IPR2023-01161), the '835 Patent (IPR2024-00004), and the '708 Patent (IPR2024-00098), each of which were instituted. In each of these post-grant proceedings, all claims of the four Nuhn Patents were challenged under the same combinations of prior art references, including U.S. Publication 2014/0112093 to Puck ("Puck"), U.S Patent No. 7,314,395 to Bryham ("Bryham"), and printed publications describing Nuhn's own prior art pump ("Nuhn Pump").[3]

6.      The PTAB issued its Final Written Decisions in the '425 Patent IPR, the '835 Patent IPR, and the '708 Patent IPR on January 27, 2025, April 14, 2025, and May 5, 2025, respectively. In the Final Written Decisions, the PTAB found a clear motivation to combine

---

[2] *See* Reexamination Control Nos. 90/019,290; 90/019,302; 90/019,428; and 90/019,258.

[3] The IPRs and the '557 Patent Reexam raise invalidity grounds based on the Nuhn Pump; however, the specific printed publication raised in the IPRs differs from the printed publication raised in the '557 Patent Reexam. Specifically, the IPRs reference the "Manure Manager" publication that discloses the Nuhn Pump, and the '557 Patent Reexam references the Nuhn Pump disclosed on Nuhn's website ("Nuhn Reference"). Both Manure Manager (attached as Exhibit 8) and the Nuhn Reference (attached as Exhibit 9) disclose the Nuhn Pump.

Puck, Bryham, and the Nuhn Pump (*see* Ex. 2, at 13-16, 41;[4] Ex. 3, at 30-33, 55-58; Ex. 4, at 41-47, 84-92), and further found all claims of the '425 Patent, the '835 Patent, and the '708 Patent unpatentable over the prior art combination of Puck, Bryham, and the Nuhn Pump (*see* Ex. 2, at 48-49; Ex. 3, at 65-66; Ex. 4, at 101-102). The PTAB also found Nuhn's proposed substitute claims unpatentable in the IPRs for the '425 and '835 Patents. (*See* Ex. 3, at 54-61; Ex. 4, at 84-92.)

7.      But despite the PTAB's uniform conclusions that those claims were unpatentable based on Puck, Bryham, and the Nuhn Pump, after the PTAB issued its Final Written Decisions, the Reexam Unit found in its August 28, 2025 Notice of Intent to Issue *Ex Parte* Reexamination Certificate (attached as Exhibit 5) that the claims of the '557 Patent were patentable over that same prior art combination because there was no motivation to combine those references. This finding is the exact opposite of the PTAB's finding reached after evaluating both sides' arguments and the evidence in its three well-reasoned Final Written Decisions. The '557 Patent Reexamination Certificate issued on October 21, 2025. (*See* Ex. 6.) Because it contradicted the PTAB's findings of invalidity of substantially identical claims based on the same prior art combination (*see* Ex. 7), the Reexam Unit's patentability finding was arbitrary, capricious, and an abuse of discretion.

8.      Specifically, the Reexam Unit's finding in the '557 Patent Reexam that there would have been no motivation to combine the Puck, Bryham, and Nuhn Pump prior art references directly contradicts the PTAB's findings in the Final Written Decisions issued in the '425 Patent, the '835 Patent, and the '708 Patent IPRs. There, in finding that all issued and proposed substitute claims of the '425, '835, and '708 Patents were unpatentable as obvious over

---

[4] Page citations are to internal page numbers provided in the cited document.

the combination of Puck, Bryham, and the Nuhn Pump, the PTAB specifically concluded that there was a motivation to combine these prior art references, and that this prior art combination presented a "strong case of obviousness." (Ex. 2, at 36-37, 47-48; Ex. 3, at 45-46; Ex. 4, at 98.) The PTAB also determined that no nexus could be presumed between Nuhn's patent claims and its alleged secondary considerations (Ex. 2, at 51-55), that given the "strong case of obviousness," any evidence of secondary considerations[5] "would need to be given substantial weight in order to determine that the claims have not been shown to be unpatentable" (Ex. 2, at 36; Ex. 3, at 45-46), and that Nuhn's secondary considerations evidence did not outweigh this strong case of obviousness (Ex. 2, at 36-37; Ex. 3, at 45-46; Ex. 4, at 69-70).

9.    Directly contrary to the PTAB's findings, however, in considering these same secondary considerations factors, the Reexam Unit reached the opposite determination on nexus, failed to indicate how much (if any) weight it was giving to such evidence, and allowed the claims of the '557 Patent.

10.    For these and other reasons explained below, the Reexam Unit's findings in the August 28, 2025 Notice of Intent to Issue Reexamination Certificate, and its subsequent issuance of the '557 Patent Reexamination Certificate on October 21, 2025, were arbitrary and capricious and contrary to law, in violation of 5 U.S.C. § 706(2)(A).

---

[5] In assessing obviousness, courts evaluate "secondary considerations"—*i.e.*, other factors that may show that an invention was not obvious from the prior art. *Graham v. John Deere Co. of Kansas City*, 383 U.S. 1, 17-18 (1966) ("Such secondary considerations as commercial success, long felt but unsolved needs, failure of others, etc., might be utilized to give light to the circumstances surrounding the origin of the subject matter sought to be patented. As indicia of obviousness or nonobviousness, these inquiries may have relevancy." (finding patents obviousness).

## THE PARTIES

11.     Bazooka is a limited liability company organized and existing under the laws of the state of Iowa, having a principal place of business at 800 E. 7th Street, Washington, IA 52353.

12.     John A. Squires is named in his official capacity as the Under Secretary of Commerce for Intellectual Property and Director of the USPTO. The Director is the head of the USPTO and together with the Reexam Unit is responsible for superintending or performing all duties required by law with respect to the issuance of patents and the *ex parte* reexamination of patents. 35 U.S.C. §§ 3(a)(1), 302-307. The Director is being sued in his official capacity. His principal place of business is in Alexandria, Virgina.

13.     The USPTO is a U.S. federal agency within the United States Department of Commerce and is headquartered in Alexandria, Virgina.

## JURISDICTION AND VENUE

14.     This case arises under the Administrative Procedure Act ("APA"), 5 U.S.C. § 701 *et seq.* This Court has subject matter jurisdiction under 28 U.S.C. § 1331.

15.     Pursuant to 5 U.S.C. § 702, Defendants have waived sovereign immunity for purposes of this suit.

16.     Plaintiff's claims for declaratory and injunctive relief are authorized by 28 U.S.C. §§ 2201-2202, by 5 U.S.C. §§ 702-706, by Federal Rules of Civil Procedure 57 and 65, and by the inherent equitable powers of this Court.

17.     Venue is proper in this District under 28 U.S.C. § 1391(e) and 5 U.S.C. § 703 because Defendants reside in and perform official duties in this District.

18.     The '557 Patent Reexamination Certificate issued October 21, 2025, and is a final agency action subject to judicial review pursuant to 5 U.S.C. § 704.

## FACTUAL BACKGROUND

### I.    The Patent System

19.     "To promote the [p]rogress of [s]cience and useful [a]rts," the U.S. Constitution empowers Congress to "secur[e] for limited [t]imes to . . . [i]nventors the exclusive [r]ight to their . . . [d]iscoveries." U.S. Const., art. I, § 8, cl. 8.  Since the first patent laws were enacted in 1790, the U.S. patent system has been a key engine of innovation and economic growth. Companies like Bazooka depend on the U.S. patent system both to provide strong legal protection for meritorious patent claims and to "weed out bad patent claims efficiently," without the need for expensive litigation. *Thryv, Inc. v. Click-To-Call Techs., LP*, 590 U.S. 45, 54(2020).

20.     To achieve these goals, and to ensure that bad patents do not inhibit innovation and competition, Congress enacted parallel administrative processes for parties to seek review of the patentability of an issued patent claim: *inter partes* review and *ex parte* reexamination. *See id.* ("By providing for *inter partes* review, Congress, concerned about overpatenting and its diminishment of competition, sought to weed out bad patent claims efficiently."); *SAS Inst., Inc. v. Iancu*, 584 U.S. 357, 360 (2018) ("Maybe the invention wasn't novel, or maybe it was obvious all along, and the patent owner shouldn't enjoy the special privileges it has received. To remedy these sorts of problems, . . . . Congress has supplemented litigation with various administrative remedies. The first of these was *ex parte* reexamination.").

21.     "Any person at any time" may request that the USPTO reexamine the patentability of an issued patent claim, through *ex parte* reexamination. 35 U.S.C. § 302.

## II.   The Relevant Patents

22.      The '557 Patent, titled "Amphibious Pumping Vehicle," is directed to an amphibious pumping vehicle that may be used to agitate livestock manure in lagoons. The Background states that existing agitators, i.e. the prior art, could only access the side of the lagoon and were unable to mix manure in the middle of large lagoons. (Ex. 1, at 1:39-48.) According to the '557 Patent, the proposed solution was to include a pump on an amphibious vehicle to agitate the center of manure lagoons as they were becoming larger. (*See, e.g.*, Ex. 1, at 1:44-51.) The Summary of the Invention explains that the vehicle includes (1) amphibious capabilities; (2) a fluid pump; (3) a hydraulic power source; and (4) remote control. (Ex. 1, at 1:55-4:58.) These are the same general components recited in the '557 Patent's single independent claim.

23.      Nuhn Industries Ltd. ("Nuhn") is the assignee of the '557 Patent. Nuhn has serially filed and obtained patents claiming priority to the '557 Patent, including the '425 Patent, the '835 Patent, and the '708 Patent. Ian Nuhn, Vice President and co-owner of Nuhn, is the sole inventor of the '557 Patent and related continuations.

24.      The claims of the '425 patent, the '835 Patent, and the '708 Patent that the PTAB found are invalid in the IPRs are substantially identical to the claims of the '557 Patent. (*See* Ex. 7.) For example:

| U.S. Patent No. 10,974,557 | U.S. Patent No. 11,358,425 |
|---|---|
| Claim 1. *An amphibious vehicle comprising:* | Claim 1. *An amphibious vehicle comprising:* |
| *a floatable vehicle body;* | *a floatable vehicle body;* |
| *a ground engaging propulsion structure;* | *ground engaging propulsion structure comprising a plurality of ground engaging elements powered by a hydraulic motor;* |
| *a fluid pump for pumping liquid manure;* | *a fluid pump for pumping liquid manure;* |

8

| U.S. Patent No. 10,974,557 | U.S. Patent No. 11,358,425 |
|---|---|
| *at least one fluid nozzle connected by a fluid conduit to the fluid pump;* | Claim 5: *The vehicle of claim 4, wherein the vehicle further comprises a nozzle at the end of the conduit.* |
| *a power source connected to a hydraulic pump and configured to provide power to both the ground engaging propulsion structure and the fluid pump; and,* | (returning to Claim 1) *a power source connected to a hydraulic pump, the power source configured to provide power to both the ground engaging propulsion structure and the fluid pump; and,* |
| *remote control structure configured to control the ground engaging propulsion structure and a flow of fluid from the fluid nozzle, wherein the speed and/or direction of the vehicle is remotely controllable by an operator remote from the vehicle when the vehicle is ground engaging and when the vehicle is floating.* | *a wireless remote control configured to enable an operator who is remote from the vehicle to: (1) control the ground engaging propulsion structure; (2) control a flow of liquid manure from the fluid pump; (3) control at least one of the speed and direction of the vehicle when the vehicle is ground engaging; and, (4) control at least one of the speed and direction of the vehicle when the vehicle is floating.* |

## III.     The Nuhn Lawsuits

25.       Nuhn first sued Bazooka for allegedly infringing the '557 Patent and U.S. Patent No. 9,694,636 ("the '636 Patent") in the Eastern District of Wisconsin in November 2021. *Nuhn Indus. Ltd. v. Bazooka Farmstar, LLC*, No. 2:21-cv-01322-BHL, Dkt. 1 (E.D. Wis. Nov. 16, 2021). The case was transferred in 2022 to the Southern District of Iowa. After Bazooka sent Nuhn a letter alleging that its claims were baseless under Federal Rule Civil Procedure 11, Nuhn withdrew the infringement claims for the '636 Patent and filed a separate lawsuit asserting its newly issued '425 Patent. *See Nuhn Indus. Ltd. v. Bazooka Farmstar, LLC*, No. 3:22-cv-00044-SMR-SBJ, Dkt. 1 (S.D. Iowa July 20, 2022); *Nuhn Indus. Ltd. v. Bazooka Farmstar, LLC*, No. 3:22-cv-00015-SMR-HCA, Dkt. 2 (S.D. Iowa Mar. 17, 2022).

26.	Nuhn subsequently filed another serial lawsuit for alleged infringement of its newly issued '835 Patent and later added claims relating to the later issued '708 Patent (also direct continuations) in the Southern District of Iowa. *Nuhn Indus. Ltd. v. Bazooka Farmstar, LLC*, No. 3:22-cv-00076-SMR-HCA, Dkt. 10 (S.D. Iowa Jan. 3, 2023). The lawsuits against Bazooka relating to the '557 Patent, the '425 Patent, the '835 Patent, and the '708 Patent were consolidated in a single action. *Nuhn Indus. Ltd. v. Bazooka Farmstar, LLC*, No. 3:22-cv-00044-SMR-HCA, Dkt. 39 (S.D. Iowa Apr. 7, 2023); *Nuhn Indus. Ltd. v. Bazooka Farmstar, LLC*, No. 3:22-cv-00076-SMR-HCA, Dkt. 33 (S.D. Iowa Apr. 7, 2023). Nuhn also sued several Bazooka customers for patent infringement in separate districts around the country, which were stayed pending resolution of the case against Bazooka. *See Nuhn Indus. Ltd. v. Bazooka Farmstar LLC and Tasch's Custom LLC*, No. 2:21-cv-01322-BHL, Dkt. 37 (E.D. Wis. Nov. 16, 2021); *Nuhn Indus. Ltd. v. Atlas AG Services, LLC*, No. 1-23-cv-00368, Dkt. 26 (W.D.N.Y. Feb. 12, 2024).

27.	Nuhn is currently suing Bazooka on the '557 Patent, '425 Patent, '835 Patent, and '708 Patent for manufacturing and selling its manure agitation vehicle, the Wolverine. Nuhn is seeking damages from Bazooka for alleged infringement of the '557 Patent, as well as an injunction. Bazooka has been harmed and continues to be harmed by Nuhn's assertion of the '557 Patent against it and its customers. Bazooka is being forced to incur significant legal fees and expenses to defend itself against Nuhn's infringement claims in litigation. Even after the PTAB invalidated all claims of the '425 Patent, the '835 Patent, and the '708 Patent, Nuhn continues to assert those invalid claims. Bazooka's devotion of time and resources in defending itself against these invalid patents is disrupting its business. Moreover, Nuhn's accusations of patent infringement against Bazooka and its customers have harmed and continue to harm to Bazooka's reputation in the industry. The issuance of the '557 Patent Reexamination Certificate

allows Nuhn to maintain its improper patent lawsuit on its reexamined '557 Patent claims against Bazooka. The '557 Patent is now the only remaining patent in the litigation involving Bazooka's Wolverine product that has not been found invalid by the PTAB.

28.     The Southern District of Iowa consolidated case has been stayed pending the outcome of the appeals of the Final Written Decisions in the '425 Patent IPR, '835 Patent IPR, and '708 Patent IPR. *Nuhn Indus. Ltd. v. Bazooka Farmstar LLC*, No. 3:22-cv-00015-SMR-HCA, Dkt. 311 (S.D. Iowa July 8, 2025).

29.     Bazooka seeks a favorable decision from this Court ordering the Director to revive or initiate *ex parte* reexamination of the '557 Patent to find the claims of the '557 Patent invalid, consistent with the PTAB's decisions in the '425 Patent, '835 Patent, and '708 Patent IPRs. This relief will ultimately result in the '557 Patent claims being canceled, thereby preventing Nuhn from maintaining its infringement claims against Bazooka in litigation relating to the '557 Patent.

## IV.    The Relevant Prior Art

30.     As detailed above, in each of the '557 Patent Reexam and the IPRs for the '425 Patent, the '835 Patent, and the '708 Patent, the same grounds of invalidity were presented based on the combinations of Puck, Bryham, and the Nuhn Pump.

31.     Puck, titled "Floating Manure Agitator," recognized the difficulties with earlier tractor-mounted pumps and disclosed a floating, remote-controlled pumping vehicle for agitating manure lagoons. (Ex. 10.) Puck taught that it was desirable to "provide a floating vehicle configured to the standard, height, weight and width restriction associated with highway travel." (Ex. 10, at ¶9.)

32.     Puck disclosed that the vehicle included a fluid pump used to draw from the watery supernatant layer and nozzles through which the pumped fluid was expelled to steer and propel the vehicle as well as agitate and mix the liquid manure. (Ex. 10, at ¶¶35-36.)

33.     Puck describes a cumbersome process for launching the vehicle into a manure lagoon. First, the user trailers the vehicle by truck over the shoreline adjacent the manure lagoon. (Ex. 10, at ¶34.) The trailered vehicle is then backed down the bank of the manure lagoon, after which the operator "manually pushe[s]" the vehicle from the trailer into the lagoon. (Ex. 10, at ¶34.) Once agitation is complete, the operator must couple the cable to the front of the vehicle while it is floating in the manure lagoon and crank the winch to haul the agitator out of the lagoon, as shown below. (Ex. 10, at ¶38.)



(Ex. 10 (annotations added).)

34.     Bryham, titled "Amphibious Vehicle," discloses adding all-terrain "ground engaging means" to a boat to make an amphibious vehicle to allow boats to ingress and egress rivers and lakes more efficiently and conveniently. (Ex. 11, at 2:31-42.) Bryham teaches adding steerable, motorized, all-terrain wheels to such boats to solve the identified problems with launching and retrieving boats using trailers. (Ex. 11, at 1:11-54, 2:19-27.)

35.       Bryham describes how when launching vessels with trailers, at least one occupant "usually needs to get their feet wet." (Ex. 11, at 1:18-23.) Bryham's solution for launching vessels does not require a user stepping in or near the shore where the vehicle is being launched. (Ex. 11, at 1:17-23, 2:19-27, 10:55-11:2.) Bryham notes that "[w]here no launching ramp is available" users are faced with the problem of "manoeuvr[ing] [sic] a towing vehicle and trailer over unpaved terrain and into the water." (Ex. 11, at 1:55-58.) Bryham's solution for launching vessels in areas lacking a boat launch is to provide powered, all-terrain wheels capable of negotiating rugged shoreline terrain. (Ex. 11, at 1:24-27, 2:19-27.) Bryham recognizes the issues associated with exposing trailers to corrosive environments when launching boats and discusses how adding its hydraulically powered wheels to boats solves these problems. (Ex. 11, at 1:55-60, 2:19-27.)

36.       The Nuhn Pump is Nuhn's own manure pit pump, which is described on Nuhn's website publication (i.e., the Nuhn Reference (Ex. 9)) and in the Manure Manager publication (Ex. 8 at 27.) The Nuhn Pump is the commercial embodiment of U.S. Patent No. 8,944,758 ("the '758 Patent"), assigned to Nuhn, the application of which is incorporated by reference into the '557 Patent. Nuhn touts the efficiency, longevity, and power of the Nuhn Pump's muti-outlet housing in its literature. (Ex. 8, at 27; Ex. 9, at 5, 7.) Nuhn did not disclose its prior art Nuhn Pump to the USPTO during the prosecution of the '557 Patent, the '425 Patent, the '835 Patent, and the '708 Patent despite claiming a pump having a housing with multiple outlets.

13



(Ex. 8, at 27.)

## V.  Related *Ex Parte* Reexaminations and *Inter Partes* Reviews

37.  Nuhn initially obtained and sued Bazooka on the '557 Patent and the '425 Patent, which are direct continuations that describe and claim the same embodiment of an amphibious pumping vehicle. Because such vehicles were already known in the art, Bazooka filed a first set of *ex parte* reexamination requests with the USPTO relating to these patents. *See* Reexamination Control Nos. 90/019,076 ('557 Patent reexamination); 90/019,107 ('425 Patent reexamination). In the two reexamination proceedings that followed, the Reexam Unit accepted Nuhn's arguments distinguishing the claims from a prior art amphibious pumping vehicle by arguing that a pump for pumping liquid manure has different requirements than a pump for pumping water. Nuhn also added 67 new claims to the '557 Patent. The Reexam Unit issued a reexamination certificate for the '557 Patent on December 28, 2022.

### a.  The '425 Patent IPR, the '835 Patent IPR, and the '708 Patent IPR

38.  After the Reexam Unit initially issued the reexamination certificate for the '557 Patent, between October 13, 2023 and June 30, 2023, Bazooka filed IPR petitions for the '425, '835, and '708 Patents (collectively, "the IPRs"). (*See* IPR Nos. IPR2023-0116; IPR2024-00004; and IPR2024-00098 (Exs. 14-16)). In each of these IPR petitions, Bazooka challenged all claims

based on the combinations of Puck and Bryham or of Puck, Bryham, and the Nuhn Pump. The PTAB instituted IPR proceedings on each petition on January 9, 2024, April 16, 2024, and May 23, 2024, respectively.

39.     Following institution, Bazooka and Nuhn filed thousands of pages of evidentiary exhibits, submitted expert and fact witness declarations, deposed those witnesses, and prepared and filed substantive briefing addressing the validity of the claims. In the IPRs for the '425 and '835 Patents, Nuhn also moved to amend to add various substitute claims directed to the placement and immersibility of the pump. (Ex. 12; Ex. 13.) Bazooka opposed these motions, and the parties litigated the validity of the substitute claims along with the issued claims of each patent. Following the conclusion of the briefing and discovery periods, the parties presented their respective cases at trial.

40.     The PTAB weighed the evidence and arguments presented at trial. On January 27, 2025, April 14, 2025, and May 8, 2025, respectively, the PTAB issued Final Written Decisions in each IPR proceeding, totaling more than 150 pages, finding that all claims of the '425, '835, and '708 Patents are unpatentable, as discussed below.

> **i.     The PTAB Found a Prima Facie Case of Obviousness Over Puck and Bryham**

41.     In the IPRs, the PTAB found that there was a motivation to combine Puck and Bryham. Specifically, the PTAB found that that a person of ordinary skill in the art ("POSA") would have been motivated to add the powered, steerable wheels of Bryham to Puck's boat to solve the problems that users (especially single users) faced launching and retrieving Puck's boat within a manure lagoon. The motivation to combine comes from the desire to make transporting, launching, and retrieving the Puck boat easier, safer, and without having to put the trailer (let alone one's feet) in or next to the corrosive manure lagoon. The PTAB found that a POSA would

have recognized the problems of Puck (describing a cumbersome, manual process of launching the boat) and realized they are the same problems identified and solved by adding Bryham's powered, steerable wheels to a boat, such as Puck. The PTAB also found that a POSA would have recognized that Puck could be readily modified to include the wheels of Bryham. This obvious combination creates a safer, more efficient means of transporting, launching, and retrieving Puck's boat into a manure lagoon. (Ex. 2, at 13-16 (citing Bazooka's Petition for IPR of the '708 Patent (attached hereto as Ex. 14), at 73-76)); Ex. 3, at 30-33 (citing Bazooka's Petition for IPR of the '425 Patent (attached hereto as Ex. 15), at 73-76)); Ex. 4, at 39-47 (citing Bazooka's Petition for IPR of the '835 Patent (attached hereto as Ex. 16), at 83).)

42.    The PTAB rejected Nuhn's arguments disputing the prima facia case of obviousness over Puck and Bryham in its Patent Owner's Responses in the IPRs, including Nuhn's arguments concerning the reasonable expectation of success, motivation to combine, and the teaching of various claim elements. Specifically, the PTAB rejected Nuhn's arguments regarding the reasonable expectation of success in adding Bryham's wheels to Puck's boat due to the differences in the Puck and Bryham vehicle hulls. The PTAB noted that "[r]ather than address[ing] the overall teachings of Puck and Bryham, [Nuhn] argues about potential issues that may arise with particular embodiments of Puck and Bryham," but "none of these specific features in Puck and Bryham identified by [Nuhn] are required by claim 1." (Ex. 3, at 30.) The PTAB found Bazooka's arguments regarding how a POSA would attach wheels to Puck's frame—which had expert declaration support—convincing. (Ex. 3, at 31.) Furthermore, the PTAB noted that Bryham teaches how to put wheels on a boat, which is uncontested by Nuhn. (Ex. 3, at 31-32.)

43.    The PTAB also rejected Nuhn's arguments that the Puck and Bryham combination would have steering and stability problems due to Bryham's three-wheel design. (Ex. 17, at 73-74; Ex. 18, at 73-77; Ex. 19, at 71-72.) The PTAB pointed out that Bryham discloses "*at least* three wheels," but Nuhn did not address the obviousness of including four wheels rather than three. (Ex. 3, at 32-33; *see also* Ex. 2, at 15.) In fact, the PTAB rejected Nuhn's arguments as "not persuasive at least because they [we]re premised on Bryham's amphibious vehicle being limited to its exemplary three-wheel design," even though Bryham has a broader teaching. (Ex. 4, at 45.)

44.    The PTAB also rejected Nuhn's remaining motivation-to-combine arguments. While Nuhn argued that Puck did not necessarily disclose that an operator or trailer must enter the lagoon to launch the Puck boat, the PTAB noted that Bryham identified difficulties and problems encountered when launching a boat using a trailer, and that a POSA would be motivated to combine Bryham and Puck in order to make it easier and safer to launch and retrieve Puck's boat. (Ex. 2, at 14-15; Ex. 3, at 31-32; Ex. 4, at 39-47.) Indeed, the whole purpose of Bryam was to avoid the difficulties of using a trailer to launch a boat where there is no boat launch—like the bank of a manure lagoon. Likewise, the PTAB rejected Nuhn's corrosion arguments, explaining that the Bryham vehicle's ground engaging propulsion structure was designed for use in corrosive environments. And the PTAB rejected Nuhn's arguments relating to locking of hydraulic wheels, noting that a POSA would have known how to address the known issues with hydraulically powered wheels locking when there is no hydraulic flow. (Ex. 4, at 44-46.)

45.    Finally, the PTAB rejected Nuhn's arguments that the combination of Puck and Bryham did not disclose several elements of the claims, including a remote control for

17

controlling a ground engaging propulsion structure, a power source for powering the fluid pump and the ground engaging propulsion structure, and floatable elements between the wheels. Specifically, the PTAB found that a POSA would have understood that it would have been obvious to extend the remote-control functionality of Puck to the ground engaging propulsion structure of Bryham. (Ex. 2, at 17-19; Ex. 3, at 34-36; Ex. 4, at 35-39.) The PTAB also found that a POSA would have been motivated and equipped to use Puck's power source to power both the fluid pump and the ground engaging propulsion structure of the Puck and Bryham combination. (Ex. 2, at 16-17; Ex. 3, at 33-34; Ex. 4, at 31-34.) The PTAB further found that the claim elements relating to the positioning of the floatable elements between the wheels were obvious over the combination of Puck and Bryham. (Ex. 2, at 22-26.)

### ii. The PTAB Found a Prima Facie Case of Obviousness Over Puck, Bryham, and the Nuhn Pump

46.    In the IPRs, the PTAB also determined that there was a motivation to combine the Nuhn Pump (as disclosed in the Manure Manager publication) with Puck and Bryham. Specifically, the PTAB found that a POSA would have been motivated to combine the Nuhn Pump with the Puck boat to take advantage of the pump's improved efficiency and manure pumping capabilities. (Ex. 2, at 41; Ex. 3, at 55-58; Ex. 4, at 84-86.) Additionally, the PTAB found that adding the Nuhn Pump—which is a submersible centrifugal unit that does not require priming—to the Puck boat would remove the need to prime the pump of Puck, thereby removing a potential failure mode and additional step to operate the vehicle. (Ex. 2, at 41; Ex. 4, at 17-20.) Finally, the PTAB concluded that a POSA would have positioned the Nuhn Pump through the Puck vehicle in the same location in which Puck discloses its pump intake extending though the vehicle. (Ex. 4, at 89-91.)

47.     The PTAB rejected Nuhn's arguments against this combination, which focused on the location at which a POSA would have been motivated to have attached the Nuhn Pump to the Puck vehicle. Specifically, the PTAB rejected Nuhn's argument that a POSA would have pivotably attached the Nuhn Pump to the rear of the Puck vehicle. (Ex. 4, at 88-89.) The PTAB also rejected Nuhn's arguments regarding potential alignment issues that could result between the Nuhn Pump power-take-off input and the Puck engine power-take-off output. (Ex. 4, at 88-91.) In making its determinations, the PTAB found that a POSA could have made reasonable inferences and modifications to the Nuhn Pump when attaching it to the vehicle of Puck and Bryham, and that the advantages of centrally locating the pump would have outweighed any advantage from the pivoting functionality of the Nuhn Pump. (*Id*.)

### iii.     The PTAB Found that Secondary Considerations do not Outweigh the Strong Case of Obviousness

48.     The PTAB also rejected Nuhn's secondary considerations arguments relating to commercial success, a long-felt need, copying, unexpected results, praise by others, licensing, and skepticism. The PTAB initially noted that given the "strong case of obviousness in view of Puck and Bryham[,]" any secondary considerations evidence "would need to be given substantial weight" to determine that the claims are not unpatentable. (Ex. 3, at 46.) After considering Nuhn's secondary consideration evidence, the PTAB ultimately determined that Nuhn's "evidence [was] insufficient to overcome the strong case of obviousness in view of Puck and Bryham." (Ex. 3, at 45-46; Ex. 2, at 36-37; *see also* Ex. 4, at 69-70 (stating that Nuhn's "objective evidence of nonobviousness is weak in comparison to the evidence regarding the prior art under the first three *Graham* factors").)

49.     First, regarding commercial success, despite Nuhn's purported sales numbers and market share arguments, the PTAB found that Nuhn presented a very weak showing of

commercial success because it did not provide any evidence of the definition of the relevant market (e.g., manure agitation vehicles or all manure agitation devices), the size of the market, the major players, or the market share of the major players. Thus, the PTAB was unable to contextualize Nuhn's sales in view of the market, so it only afforded this evidence some weight. (Ex. 2, at 27-28; Ex. 3, at 37-38; Ex. 4, at 55-57.)

50.     The PTAB also rejected Nuhn's arguments regarding the difficulty of mixing manure lagoons with other agitation vehicles, noting that "[b]eing a difficult, but solved problem is very different from being an unsolved problem." The PTAB also found that Puck had previously solved the problem identified by Nuhn. And while Nuhn may have developed another way to address the problem, the PTAB found that Nuhn had not established that there was a long-felt and previously unsatisfied need. Overall, the PTAB found Nuhn presented insufficient evidence to establish that the invention solved a long-felt, previously unmet meet. (Ex. 2, at 28-29; Ex. 3, at 38-39; Ex. 4, at 58-59; *see also* Ex. 17, at 16-17; Ex. 18, at 42-43; Ex. 19, at 31-32.)

51.     The PTAB considered Nuhn's allegations that Bazooka's Wolverine and Nuhn's Lagoon Crawler share substantial similarity, and that Bazooka had access to the Lagoon Crawler as evidence of copying. The PTAB found that Nuhn failed to present evidence showing that the vehicles are substantially similar. Indeed, Bazooka's Wolverine has wheels that do not raise and lower and uses propellers rather than nozzles to steer and propel the vehicle and agitate the manure lagoon. Thus, the PTAB found that there was insufficient evidence to establish copying. (Ex. 2, at 29-30; Ex. 3, at 39-40; Ex. 4, at 59-62.)

52.     The PTAB also rejected Nuhn's unexpected results arguments, noting that Nuhn failed to submit supporting evidence and instead merely advanced attorney arguments. Further, the PTAB found that Nuhn did not establish a difference between its allegedly unexpected results

and those of the closest prior art. Rather, the PTAB credited Bazooka's expert's testimony showing that the results alleged by Nuhn were both expected and known in the art. Overall, the PTAB found that there was insufficient evidence to establish unexpected results. (Ex. 2, at 30-32; Ex. 3, at 40-41; Ex. 4, at 62-64; *see also* Ex. 18, at 45-50; Ex. 19, at 34-38; Ex. 17, at 19-23.)

53.    The PTAB also discounted Nuhn's industry praise arguments. While Nuhn argued that its Lagoon Crawlers have been extensively praised for innovation in printed publications and received industry awards, the PTAB found that "[t]he Lagoon Crawler's appearance may have influenced the amount of publicity it received." The PTAB considered Ian Nuhn's touting of the Lagoon Crawler as a "jacked-up Ferrari" and his statement that, "I think because we made it look the way it does people are proud to fork over that kind of change and they are proud to own it," and determined that there was no evidence linking Nuhn's purported "industry praise" to its patented features. (Ex. 3, at 41-43; *see also* Ex. 2, at 32-34; Ex. 4, at 64-67.)

54.    The PTAB also rejected Nuhn's licensing arguments, finding that Nuhn's single email from Puck with an alleged licensing inquiry was insufficient evidence to establish licensing of the patented invention. (Ex. 2, at 34; Ex. 3, at 44; Ex. 4, at 67-68; *see also* Ex. 17, at 23; Ex. 18, at 50-51; Ex. 19, at 39.)

55.    Finally, the PTAB rejected Nuhn's industry skepticism arguments. The PTAB determined that Ian Nuhn's (the sole inventor and co-owner of Nuhn) allegations in his declaration should be given little weight because "Mr. Nuhn's unsubstantiated conclusion[s] [are] not persuasive evidence. (Ex. 4, at 61.) The PTAB also considered Nuhn's only other skepticism evidence—a video of a farmer talking about the Lagoon Crawler and saying he "never thought it could be done." The PTAB determined these remarks were similarly insufficient to determine that Nuhn "'went against conventional wisdom' or that the 'industry'

was skeptical that the Lagoon Crawler would function as advertised." (Ex. 2, at 35-36; Ex. 3, at 44-45; Ex. 4, at 68-69.)

56.     Finally, the PTAB determined that Nuhn failed to establish any nexus between its patent claims and alleged secondary considerations. Specifically, the PTAB noted that Nuhn failed to establish a presumption of nexus because Nuhn did not show that its products were *coextensive* with its patent claims. Ex. 4, at 54-55. While the PTAB acknowledged Nuhn's evidence that its products were covered by its patent claims, the PTAB found that other "features that Nuhn describe[d] as 'material' or essential to the synergy of the alleged invention" are not claimed. Thus, Nuhn's product cannot be considered *coextensive* with Nuhn's patent claims in such a way that would establish a presumption of a nexus necessary for overcoming the prima facie case with secondary considerations. (Ex. 4, at 55.)

57.     Overall, after reviewing Nuhn's evidence of secondary considerations, the PTAB concluded that Nuhn's secondary considerations were insufficient to overcome the strong case of obviousness in view of Puck and Bryham. (Ex. 2, at 36-37; Ex. 3, at 45-46; *see also* Ex. 4, at 69-70.) Accordingly, the PTAB found all issued claims and proposed substitute claims of Nuhn's '425 Patent, '835 Patent, and '708 Patent to be unpatentable in the IPRs as obvious in view of Puck and Bryham, as well as Puck, Bryham, and the Nuhn Pump. (Ex. 2, at 48-49; Ex. 3, at 65-66; Ex. 4, at 101-102.) Thus, three separate times, all claims of the Nuhn Patent and proposed substitute claims were found unpatentable by the PTAB as obvious over this combination of prior art.

58.     After the PTAB issued final written decisions finding all issued and proposed substitute claims of the '425, '835, and '708 Patents unpatentable, Nuhn appealed the Final Written Decisions to the Federal Circuit. *Nuhn Indus. Ltd. v. Bazooka-Farmstar, LLC*, No. 2025-

1599, Dkt. 11 (Fed. Cir. July 7, 2025); *Nuhn Indus. Ltd. v. Bazooka-Farmstar, LLC*, No. 2025-1923, Dkt. 12 (Fed. Cir. Oct. 20, 2025); *Nuhn Indus. Ltd. v. Bazooka-Farmstar, LLC*, No. 2025-2136, Dkt. 1 (Fed. Cir. Sept. 23, 2025). Those appeals remain pending.

### b. The '557 Patent Reexam, August 28, 2025 Notice of Intent to Issue Reexamination Certificate, and Reexamination Certificate

59. In addition to filing the petitions for IPR of the '425 Patent, the '835 Patent, and the '708 Patent (filed between June 30, 2023 and November 3, 2023), Bazooka also filed additional requests for *ex parte* reexamination on the '557 Patent (filed between September 26, 2023 and February 22, 2024), raising the invalidity grounds presented in the IPR petitions. *See* Reexamination Control Nos. 90/019,290; 90/019,302; 90/019,428; and 90/019,258.

60. One of the reexamination requests, 90/019,302, asserted that certain claims of the '557 Patent were unpatentable as obvious over the combination of Puck and Bryham, and also that all claims of the '557 Patent were obvious over the combination of Puck, Bryham, and the Nuhn Reference. (Ex. 20, at 18-19.) The remaining three reexamination requests raised other invalidity challenges that were also presented in the IPR proceedings but were not considered by the PTAB.

61. The Reexam Unit ordered a reexamination in response to each of the four requests after finding that they each raised a substantial new question of patentability. The four reexaminations were later merged.

62. On September 9, 2024, the Reexam Unit issued a non-final office action, rejecting all claims of the '557 Patent over various grounds, including rejecting certain claims over the combination of Puck and Bryham, and rejecting all claims over the combination of Puck, Bryham, and the Nuhn Reference. (Ex. 21, at 17-22, 28-35.)

63.     On November 8, 2024, Nuhn filed a response to the non-final office action with claim amendments and remarks aimed at overcoming the rejections. Nuhn also added new claims 81-114. (*See generally* Ex. 22.) As the *ex parte* reexamination process is just that, *ex parte*, Bazooka was not able to correct misstatements or address the "evidence" submitted by Nuhn in the proceeding.

64.     On January 13, 2025, the Reexam Unit issued a Notice of Intent to Issue Reexamination Certificate finding that (i) there was no motivation to combine Bryham's powered wheels with Puck and that the combination of Puck and Bryham constitutes impermissible hindsight; (ii) there was no motivation to combine Puck and Bryham with the Nuhn Reference; and (iii) the evidence of secondary considerations presented by Nuhn was moot because the prior art failed to teach all the limitations as claimed. (Ex. 23, at 5-8.) Thus, the Reexam Unit concluded that all claims of the '557 Patent were patentable.

65.     Shortly thereafter, on January 27, 2025, the PTAB issued its Final Written Decision in the '425 Patent IPR. After evaluating and resolving the conflicting evidence and argument, the PTAB found that a motivation to combine Puck, Bryham, and Manure Manager existed, that these references disclosed all claimed elements, and that Nuhn's secondary considerations did not outweigh the strong case of obviousness. Thus, the PTAB found all claims of the '425 Patent and Nuhn's proposed substitute claims unpatentable as obvious over the combinations of Puck and Bryham and of Puck, Bryham, and Manure Manager. (Ex. 3 at 29, 32-33, 58, 65-66.)

66.     After the PTAB's issued its Final Written Decision in the '425 Patent IPR, Nuhn filed an Information Disclosure Statement in the '557 Patent Reexam that cited it.

67.     On April 14, 2025, the Reexam Unit withdrew the January 13, 2025 Notice of Intent to Issue Reexamination Certificate regarding the '557 Patent in view of the IPR Final Written Decision finding all claims of the '425 Patent unpatentable over the same prior art at issue in the reexamination proceeding. In so doing, the Reexam Unit acknowledged that "[t]he '425 patent is related to and has claims which are similar to the claims of the subject patent of this merged reexam proceeding." (Ex. 24, at 2.) Due to this similarity in the claims, the Reexam Unit indicated that "[i]n the interest of avoiding conflicting opinions from the Office, the examiner defers to the opinion of the PTAB and withdraws the [Notice of Intent to Issue Reexamination Certificate] and reestablishes the claim rejections[.]" (*Id.*, at 7.) After the Reexam Unit withdrew the '557 Patent Notice of Intent to Issue Reexamination Certificate, the proceeding was returned to the patent examiner, who issued a new non-final office action rejecting the claims as obvious over the combination of Puck and Bryham and the combination of Puck, Bryham, and the Nuhn Pump, consistent with the PTAB's Final Written Decision in the '425 Patent IPR. (*Id.*, 7-29.)

68.     On July 11, 2025, Nuhn responded to the new non-final office action. (Ex. 25.) In its response, Nuhn amended certain claims and added additional new claims 115-131. Nuhn also once again disputed the prima facie case of unpatentability based on Puck, Bryham, and the Nuhn Pump and argued the same secondary considerations factors on which it relied in the IPRs.

69.     But even though the PTAB had repeatedly considered and rejected Nuhn's arguments and secondary considerations evidence in the IPRs for the '425, '835, and '708 Patents on substantially identical claims, the Reexam Unit accepted Nuhn's July 11, 2025 response arguments and issued a Notice of Intent to Issue Reexamination Certificate on August 28, 2025.

70.     Specifically, and directly contrary to the IPR Final Written Decisions, the Reexam Unit found that the Puck and Bryham combination failed to disclose remote control of a ground engaging propulsion structure, as claimed in the '557 Patent. (Ex. 5, at 6-7.) In reaching this determination, the Reexam Unit appears to have accepted Nuhn's argument that the Puck remote control system would be limited to controlling the same functionality disclosed in Puck. (Ex. 25, at 46-47.) But the PTAB had rejected these same arguments three times in connection with substantially identical claims in the IPRs, finding that the Puck remote control could easily be configured to control the ground engaging propulsion structure of Bryham. Thus, the PTAB concluded that "the combination of Puck and Bryham teaches or suggests 'a wireless remote control configured to enable an operator who is remote from the vehicle to: (1) control the ground engaging propulsion structure[.]'" (Ex. 4, at 36-37.) The Reexam Unit's action directly contradicted the PTAB's conclusion.

71.     The Reexam Unit also found, in direct contradiction to the PTAB, that there was no motivation to combine Puck and Bryham or Puck, Bryham, and the Nuhn Pump. (Ex. 5, at 6-7.) Specifically, contrary to the PTAB's repeated findings, the Reexam Unit found that "the combination is seen as a product of impermissible hindsight to combine and modify the references[.]" (*Id*., at 7.) As for the addition of the Nuhn Pump, the Reexam Unit found that the "Nuhn [Pump] is designed to be moved and powered by a tractor." Thus, the Reexam Unit determined, contrary to the PTAB, that a POSA "would not be led by these disparate teachings to derive the claimed combination of the '557 patent[.]" In reaching these determinations, the Reexam Unit appears to have accepted Nuhn's arguments made in its earlier response to the office action regarding the need for Puck's trailer or users of Puck to enter the lagoon, the corrosion of liquid manure on Bryham's wheels, and locking of hydraulic wheel systems. The

PTAB considered and explicitly rejected these same arguments in the IPRs for the '425, '835, and '708 Patents.

72.    Additionally, in direct conflict with the PTAB's findings, the Reexam Unit found that there *was* a nexus between Nuhn's secondary considerations and its claims. Specifically, the Reexam Unit found that claim charts appended to Nuhn's expert's declaration (purporting to show that Nuhn's products were covered by Nuhn's patent claims) "provid[e] the necessary nexus between the claims and the commercial product." But the PTAB already reached the contrary result, finding with respect to substantially identical claims that such evidence was insufficient to establish that Nuhn's products were *coextensive* with its patent claims as to provide the requisite nexus. Ex. 4, at 54-55. Rather, as the PTAB determined, because there are other "features that Nuhn describe[d] as 'material' or essential to the synergy of the alleged invention" that are not claimed, Nuhn's product cannot be considered *coextensive* with Nuhn's patent claims. (Ex. 4, at 55.) Thus, the Reexam Unit's determination that Nuhn's claim chart established nexus between its patent claims and its secondary considerations directly conflicts with the determination made by the PTAB in the IPRs.

73.    Finally, in direct contradiction to the PTAB, the Reexam Unit apparently accepted Nuhn's secondary considerations assertions regarding commercial success. Despite the PTAB's instruction that "any evidence of secondary considerations would need to be given substantial weight" to find the Nuhn Patent claims patentable, the Reexam Unit allowed the claims of the '557 Patent without stating whether it gave any weight to Nuhn's secondary considerations. Additionally, in considering the commercial success secondary considerations factor (the only one noted in the Notice of Intent to Issue Reexamination Certificate), the Reexam Unit appears to credit "new" declaration testimony from various fact witnesses. But Reexam Unit incorrectly

described this testimony, including Mr. Puck's deposition transcript, as not before the PTAB when it was in fact considered by the PTAB. (Ex. 5, at 9-10; Ex. 4, at 83 (discussing "the testimony of Mr. Puck")). Furthermore, this "new" evidence is unsubstantiated and cherry-picked to support Nuhn's position. For example, Nuhn points to excerpts of deposition transcripts of Bazooka employees taken out of context in an attempt to argue that Nuhn and Bazooka were the only two companies with agitation boats on the market. (Ex. 25, at 92-96.) Thus, the Reexam Unit's determination on this factor when considering this evidence was inconsistent with the PTAB's determinations. All were issues that Bazooka could not address in the *ex parte* reexamination process but successfully did so in the IPRs.

74.    Following the issuance of the Notice of Intent to Issue Reexamination Certificate on August 28, 2025, the Reexam Unit issued a second Reexamination Certificate for the '557 Patent on October 21, 2025. (Ex. 6.)

## COUNT I

**Final Agency Action in Violation of 5 U.S.C. §§ 706(2)(A), (C) as to the August 28, 2025 Notice of Intent to Issue Reexamination Certificate and Reexamination Certificate**

75.    Plaintiff incorporates by reference the allegations contained in the proceeding paragraphs as though set forth in full herein.

76.    The '557 Patent Reexamination Certificate, issued on October 21, 2025, constitutes a final agency action of the USPTO within the meaning of 5 U.S.C. § 704.

77.    There are no administrative remedies available to Plaintiff to challenge the Reexam Unit's determinations in the Notice of Intent to Issue Reexamination Certificate and the issuance of the Reexamination Certificate.

28

78.     Under the APA, the Court "shall . . . hold unlawful and set aside" final agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," 5 U.S.C. § 706(2)(A), or "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right," 5 U.S.C. § 706(2)(c).

79.     The August 28, 2025 Notice of Intent to Issue Reexamination Certificate and subsequent issuance of the '557 Patent Reexamination Certificate violated § 706(2)(A) because it was arbitrary, capricious, and an abuse of discretion. Specifically, the Reexam Unit's finding that there would have been no motivation to combine Puck and Bryham, or Puck, Bryham, and the Nuhn Reference is directly contradictory to the PTAB's Final Written Decisions in the IPRs for the '425 Patent, the '835 Patent, and the '708 Patent, which all found that all of the claim elements were taught by, and that there was a motivation to combine Puck and Bryham, and Puck, Bryham, and the Nuhn Reference. Moreover, the Reexam Unit's determinations on secondary considerations and nexus were directly contradictory to the determinations on these same secondary considerations factors and nexus in the IPRs. Furthermore, the Reexam Unit failed to articulate in the Notice of Intent to Issue Reexamination Certificate how much weight it was giving to such evidence, in contradiction with the requirement from the PTAB that such evidence must be given substantial weight in view of the strong case of obviousness.

80.     Accordingly, the Reexam Unit's reasoning in the Notice of Intent to Issue Reexamination Certificate finding all claims of the '557 Patent allowable over the combinations of Puck and Bryham, and Puck, Bryham, and the Nuhn Reference, is directly contradictory to the decisions of the PTAB in the related IPRs for the '425 Patent, the '835 Patent, and the '708 Patent.

81.     Because of the Reexam Unit's error in reasoning, at a minimum the Director should be ordered to order a reexamination of the claims of the'557 Patent and issuance of claim rejections consistent with the Final Written Decisions from the IPRs for the'425 Patent, the '835 Patent, and the '708 Patent.

### Prayer for Relief

WHEREFORE, Plaintiff prays for the following relief:

A.  Set aside the '557 Patent Reexamination Certificate;

B.  Remand this matter to the Director and/or the Central Reexamination Unit to be decided consistently with the IPRs for the '425 Patent, the '835 Patent, and the '708 Patent;

C.  Order that the Director revive the *Ex Parte* Reexamination of the '557 Patent;

D.  Order the Director to order a new *Ex Parte* Reexamination of the '557 Patent at the Director's initiative;

E.  Order that the Central Reexamination Unit issue a new non-final office action rejecting all claims consistent with the PTAB's reasoning in the Final Written Decisions for the IPRs for the '425 Patent, the '835 Patent, and the '708 Patent and maintain that rejection over all similar arguments to those considered in connection with the IPRs for the '425 Patent, the '835 Patent, and the '708 Patent;

F.  Order the Director to compel the Central Reexamination Unit to conform its decisions in the '557 Patent Reexam to the decisions of the PTAB in the Final Written Decisions for the IPRs for the '425 Patent, the '835 Patent, and the '708 Patent and issue a final office action finding all claims of the '557 Patent unpatentable as obvious;

G.  Order the Director to issue a certificate of unpatentability canceling the claims of the '557 Patent as unpatentable;

H. Award Plaintiff its costs and attorneys' fees and expenses as allowed by law; and

I. Provide such other and further relief as the Court deems appropriate.

Dated: <u>November 25, 2025</u>                           Respectfully submitted,

<span>/s/ Joshua A. Hartman</span>
**MERCHANT & GOULD P.C.**
Joshua A. Hartman
1900 Duke Street, Suite 600
Alexandria, VA 22314
Telephone: (612) 332-5300
E-mail: jhartman@merchantgould.com


Thomas J. Leach*
Michael A. Erbele*
Taylor Stemler*
150 South Fifth Street, Suite 2200
Minneapolis, MN 55402
Telephone: (612) 332-5300
E-mail: tleach@merchantgould.com
E-mail: merbele@merchantgould.com
E-mail: tstemler@merchantgould.com
* To be admitted *pro hac vice*

***Attorneys for Defendant-Bazooka Farmstar, LLC***